# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 08-20022-TLM |
| MARTIN DALE CRAM, ) | |
| aka MARTY CRAM, ) | Chapter 13 |
| JOAN MARIE CRAM, ) | |
| fka JOAN AUER, ) | |
| fka JOAN DRUFFEL, ) | |
| fka JOAN BRYANT, ) | |
| ) | |
| Debtors. ) | |
| _____ ) | |

**MEMORANDUM OF DECISION ON
TRUSTEE'S OBJECTION TO PLAN CONFIRMATION**
_____

## INTRODUCTION

Trustee Barry Zimmerman ("Trustee") objects under § 1325(b)(1)(B) to the confirmation of the chapter 13 plan proposed by Martin and Joan Cram ("Debtors").[1] When calculating their current monthly income or "CMI" under § 101(10A)(A), Debtors omit a distribution from their 401(k) account that occurred in the six months prior to their bankruptcy filing. Trustee argues that, if included, Debtors' projected disposable income that must be paid to unsecured creditors under § 1325(b)(1)(B) would be higher than what Debtors' latest Form

---

[1] Unless otherwise indicated, all statutory references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

MEMORANDUM OF DECISION - 1

22C discloses. Debtors contend that the omission of the 401(k) distribution from CMI is proper under § 101(10A)(A), and thus their present plan is confirmable, or can be made so.

The parties submitted briefs and stipulated to the facts for the purpose of this matter. Following oral argument on March 31, 2009, the Court took the matter under advisement. The Court determines that Debtors are correct, and the distribution at issue is not included in current monthly income for purposes of § 101(10A)(A) and § 1325(b)(1). This Decision constitutes the Court's findings and conclusions.[2]

**BACKGROUND AND FACTS**

Debtors filed a joint chapter 13 petition on January 28, 2008.[3] The parties have stipulated that Mr. Cram "accumulated a 401(k) corpus over a period of time prior to the filing" of the chapter 13 case. Doc. No. 94. While it is not entirely clear when that period occurred, it appears that it substantially preceded the bankruptcy filing. The parties also agree that Debtors took a voluntary distribution in the amount of $9,110.58 from this 401(k) account within the six

---

[2] Fed. R. Bankr. P. 9014, 7052.

[3] The stipulated facts erroneously lists a petition date of January 10, 2008, but the Court takes judicial notice of the January 28, 2008 filing date. Fed. R. Evid. 201.

MEMORANDUM OF DECISION - 2

months prior to bankruptcy. *Id.*[4]

Debtors are "above median income" debtors, and they must calculate their "disposable income" using the "means test" process by correctly completing Official Form 22C, the "Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income." Debtors prepared and filed serial Forms 22C, all in an attempt to address (and negate the possible impact of) the 401(k) distribution, and they filed several different chapter 13 plans.

**First Form 22C and Plan**

The original Form 22C (Doc. No. 30, filed Mar. 11, 2008) shows the figure of $1,518.43 on line 6, as "pension and retirement income" received.[5] That Form yielded a monthly disposable income on line 59 of $1,992.81.

However, the then-pending chapter 13 plan, Doc. No. 23, proposed 60 monthly payments of only $771.00. In a "special provision" of that plan, Debtors asserted:

---

[4] Debtors' statement of financial affairs indicates that the funds went toward the purchase of a vehicle, with the balance spent on groceries, propane, and the like. *See* Doc. No. 1. Trustee has not raised arguments that disclosure of the disposition of the funds was inadequate or that any transfers or payments to creditors are potentially avoidable or otherwise impact an analysis under § 1325(a)(3), (4) or (7).

[5] This is one-sixth of the $9,110.58 distribution. Form 22C indicates, at line 1, that "All figures must reflect average monthly income received from all sources, derived during the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing. If the amount of monthly income varied during the six months, you must divide the six-month total by six, and enter the result on the appropriate line."

MEMORANDUM OF DECISION - 3

>The plan payments proposed herein are less than those called for in line 59 of the Means Test. The "Current Monthly Income" upon which that line 59 figures [*sic*] is based does not reflect real projected income owing to debtors' cash-out of Martin Cram's 401 (K) shortly before filing this case. Reversing out the effect of the cashout, line 59 would be and more properly is $623.18/month. That is the amount funded to unsecured claims in this Plan.

*Id.* at 12, ¶ 11.

**Second Form 22C and Plan**

The next Form 22C (Doc. No. 35, filed May 8, 2008) removed the $1,518.43 distribution from line 6 as "pension and retirement income," but reported that same amount on line 9(b) ("Income from all other sources") characterizing it as "401(k) cash out - Martin." The monthly disposable income on line 59 of this amended Form was $2,098.56.

Debtors amended their proposed chapter 13 plan on May 8 as well. *See* Doc. No. 33. It proposed 60 monthly payments with a total of $2,313.00 through April 2008 (*i.e.*, 3 months at $771.00 as per the first plan) and monthly payments of $910.00 for the 57 month balance of the plan. It contained a "special provision" almost identical to that quoted above except the $623.18/month figure is revised to $728.93/month. *Id.* at 12, ¶ 11.[6]

---

[6] The projected monthly payment amounts under these plans, of $771.00 and $910.00 respectively, are evidently based upon Debtors' calculation of the amounts they would need in order to fund trustee's and attorney's fees, secured claims, and the bare minimum for unsecured creditors in order to meet their revised means test adjusted to what they argued was a more "real" projected income. The proposed payments were certainly not driven by lack of funds. At the

(continued...)

MEMORANDUM OF DECISION - 4

**Third Form 22C and Plan**

The next Form 22C (Doc. No. 54, filed July 10, 2008) continued to report $1,518.43 as income on line 9(b). But it also included on line 57 the same amount of $1,518.43 as a "deduction for special circumstance."[7] This Form 22C showed monthly disposable income on line 59 of $728.93.

An amended chapter 13 plan was filed on August 7. Doc. No. 56. This plan proposed a decrease in the monthly payments starting in August, 2008, to $405.00. *Id.* at 2-3. The plan noted a substantial decrease in regular monthly income had occurred and required this change. *Id.* at 12, ¶ 11.[8] This plan also stated: "Further Line 59 of Form B22c will not be provided for in the funding of this plan." *Id.*

Following briefing and oral argument, confirmation was taken under advisement. In an oral ruling in October, 2008 on this and several other chapter

---

[6] (...continued)
time of the first plan, Debtors' schedules I and J reflected $1,609.00 available monthly, and at the time of the second plan, Debtors' schedules I and J reflected $1,314.00 available monthly. *See* Doc. Nos. 22, 38.

[7] The instruction at line 57 of Form 22C states in pertinent part: "If there are special circumstances that justify additional expenses for which there is no reasonable alternative, describe the special circumstance and the resulting expenses in lines a-c below. ... You must provide your case trustee with documentation of these expenses and you must provide a detailed explanation of the special circumstances that make such expenses necessary and reasonable."

[8] Amended schedules I and J were filed several days later on August 12. Doc. No. 60. They reflected $1,055.00 in net monthly income. While this was indeed a reduction from the $1,314.00 monthly net income on the immediately preceding schedules I and J, Doc. No. 38, it was still significantly higher than the proposed $405.00 plan payment.

MEMORANDUM OF DECISION - 5

13 cases raising similar legal issues regarding treatment of tax refunds, the Court also rejected the suggested "special circumstance expense" approach to the 401(k) distribution. Doc. Nos. 72, 73.

Following this ruling, Debtors attempted to address the 401(k) distribution's impact on current monthly income and projected disposable income issues in another way – by having the Court "strike" schedule I and the earlier filed Forms 22C and authorize the Debtors to file a new means test using a different six-month period of time and not the six-month period that immediately preceded the petition. This strategy was rejected by an oral ruling in January, 2009.

**Fourth Form 22C**

Debtors now contend the 401(k) distribution is not income for purposes of the "means test" calculations at all, and they delete any reference to it on the latest amended Form 22C (Doc. No. 89, filed March 11, 2009), which reports no such income on either line 6 or line 9(b).[9] The monthly disposable income on line 59 of this Form 22C is $707.65.

The chapter 13 plan before the Court remains that filed in August, 2008, Doc. No. 56. As noted, this plan asserts Debtors have paid $5,043.00 to the

---

[9] Correspondingly, Debtors have no need for and make no claim of an "offsetting" special circumstance "expense."

MEMORANDUM OF DECISION - 6

Trustee and proposes monthly payments of $405.00 beginning on August 2008 for the remainder of the plan.[10] The total proposed plan funding is therefore $26,913.00.[11]

Under the last Form 22C, unsecured creditors must receive $42,459.00.[12] The plan before the Court, as noted, has total funding of $26,913.00. It is clear that not all of the plan payments will go to unsecured creditors, as the plan proposes, *inter alia*, to fund $8,000.00 in fees to Debtors' counsel, pay Trustee's fees, and fund a small secured claim. Debtors' briefing suggests that plan funding may be increased in a proposed confirmation order. *See* Doc. No. 87 at 3. But the amount of such increase is not specified. And neither Trustee nor Debtors provided any calculations reflecting their view of the required level of funding to pay unsecured creditors the $707.65 per month (as per line 59 of Form 22C, Doc. No. 89) while also funding other necessary payments.[13]

---

[10] The $5,043.00 appears to represent 3 months at $771.00 ($2,313.00) and 3 months at $910.00 ($2,730.00), consistent with the first two plan proposals. This leaves 54 months at the suggested $405.00 per month.

[11] 54 months at $405.00 ($21,870.00) plus $5,043.00 = $26,913.00.

[12] Amended Form 22C, Doc. No. 89, at 8, line 59, establishes monthly disposable income of $707.65. This Form, as all prior ones, acknowledges that Debtors are above median income, and that the applicable commitment period is 60 months. Monthly disposable income of $707.65 over 60 months equals $42,459.00.

[13] The Court makes some preliminary observations about these issues, *infra* at note 19.

MEMORANDUM OF DECISION - 7

**ARGUMENTS**

Debtors argue the 401(k) distribution is not "income" within the meaning of § 101(10A)(A). Their position is that the 401(k) account is simply an asset belonging to them, and that the retirement funds were income received for means test purposes when they were earned and deposited into that account, not when Debtors subsequently took the distribution.

Trustee disagrees, and sees the 401(k) distribution as "income" that was "received" within the 6-month CMI period. He objects to confirmation of the current proposed plan under § 1325(b)(1)(B), arguing that Debtors must include the 401(k) distribution in the calculation of current monthly income and that, by excluding the distribution, their calculation of monthly disposable income of $707.65 is substantially understated.[14]

The briefing and oral argument of the parties focused on this CMI issue. Neither party focused on the fact that, even excluding the 401(k) distribution, as Debtors did in their last Form 22C, their monthly disposable income on that Form which § 1325(b)(1)(B) requires to be dedicated to payment of unsecured creditors is far in excess of what Debtors' currently proposed plan will fund.

---

[14] Trustee takes no issue with other aspects of the last Form 22C, and would evidently conclude that monthly disposable income is $2,226.08 (*i.e.*, $707.65 plus $1,518.43).

MEMORANDUM OF DECISION - 8

**DISCUSSION AND DISPOSITION**

    **A.    "Projected disposable income" and "current monthly income"**

Section 1325(b)(1)(B) provides that if the trustee objects to confirmation, the court may not approve the plan unless the plan "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." § 1325(b)(1).

"Projected disposable income" is not defined under the Code. However, "disposable income" is statutorily defined as "current monthly income" less "amounts reasonably necessary to be expended" for the support and maintenance of the debtor." § 1325(b)(2). "Current monthly income," in turn, is defined to include "the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period" preceding the bankruptcy filing. § 101(10A)(A).

The Ninth Circuit addressed the determination of "projected disposable income" in *Maney v. Kagenveama (In re Kagenveama)*, 541 F.3d 868 (9th Cir. 2008). *Kagenveama* rejected the majority view that § 1325(b)(1)(B) either permits or requires a forward-looking determination of projected disposable income by allowing for consideration of factors other than the § 1325(b) formula. *Id.* at 873-74. Instead, it held that "projected" implicates a multiplier and that

MEMORANDUM OF DECISION - 9

projected disposable income for an above median chapter 13 debtor is formula-driven. *Id*. Under this approach, the disposable income figure on line 59 of Form 22C controls the projected disposable income a debtor must propose to pay unsecured creditors to overcome a § 1325(b) objection.

### 1. The 401(k) withdrawal and CMI

The first issue is whether the 401(k) distribution made within the applicable six-month look-back period is "current monthly income" under § 101(10A)(A).[15]

Among the cases considering this issue is *Simon v. Zittel*, Nos. 07-31616, 07-31805, 07-31719, 2008 WL 750346 (Bankr. S.D. Ill. Mar. 19, 2008). It held that the 401(k) distributions were properly excluded under § 101(10A)(A) because the debtors "received" income when their wages were earned and deposited into the retirement accounts. At that time, the funds were available for the debtor's use, just as if the debtor had deposited them into a checking or savings account. *Id*. at *3. The court also noted that directing the placement of the funds evidenced the control over such income that the debtor had. It further stated:

---

[15] As discussed above, the presently proposed plan does not come close to providing funding adequate to ensure unsecured creditors will receive the amount of projected disposable income over the applicable commitment period even if Debtors' exclusion of the 401(k) distribution from current monthly income is appropriate. Thus, the Court could simply deny confirmation of the plan as proposed, and defer ruling on this 401(k) issue. However, given that Debtors evidently have available net monthly income beyond what they have so far proposed to pay into the plan, *compare* Doc. No. 60 (amended sch. I, J) *with* Doc. No. 56 (proposed plan), and given that Debtors have indicated increased funding may be proposed, *see* Doc. No. 87 (brief), the Court will address the issue.

MEMORANDUM OF DECISION - 10

> Simply put, once placed in a retirement account, the funds are unavailable to the wage earner only in the sense that there may be hoops to jump through to access them. For example, while funds deposited in a checking account can be accessed by simply writing a check, payment of deferred taxes and, in some situations, a penalty, may be required to access funds in a 401(k) or other retirement account. The presence of penalties and taxes, however, does not make the funds any more unavailable than funds in a checking account. Clearly, wages, once received by the debtor, are "received for use" and within the "care, custody and control" of the debtor until they are spent, no matter how they are allocated.

*Id*.

Trustee did not cite or discuss in his briefing or argument this decision or any other case law that addressed the inclusion or exclusion under § 101(10A)(A)'s definition of "current monthly income" of 401(k) withdrawals or similar distributions. He did argue, though, that the IRS definition of "gross income" would capture the payment as income. Doc. No. 92 at 1. This argument was rejected in *Simon*:

> The Trustee argues that the definition of income provided in the Internal Revenue Code, 26 U.S.C. § 61(a) (2006), should control the meaning of the term when it is used in the Bankruptcy Code. There is no indication in the Bankruptcy Code, however, that the Internal Revenue definition must be adopted. The Court is mindful that "[h]ere and there in the Bankruptcy Code Congress has included specific directions that establish the significance for bankruptcy law of a term used elsewhere in the federal statutes." *Howard Delivery Service, Inc. v. Zurich American Ins. Co.*, 126 S. Ct. 2105, 2113 (2006), (quoting *United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 116 S. Ct. 2106 (1996)). But that is not the case here. Where no such directions are provided in a section of the Bankruptcy Code, there is no basis to write them into the text. *Id.*

MEMORANDUM OF DECISION - 11

2008 WL 750346, at *1.

Trustee also appears to argue that the fact a 401(k) withdrawal or distribution might need to be disclosed on and addressed in tax returns for the year of distribution is indicative of the fact that it is "income" at distribution. Doc. No. 92 at 2 (noting that Debtors' 2007 tax return included the distribution). That argument was also rejected in *Simon*.

> This reasoning [that the earnings are "deferred income" because, *inter alia*, they are not taxed when deposited] is incorrect. Wages received by employees and deposited into 401(k) accounts *are* taxed by the federal government. In fact, these wages are subject to social security, Medicare, and federal unemployment taxes. Only the federal income tax on these wages is deferred.

2008 WL 750346, at *3. *Simon* also noted that, even if the characterization of deferred taxation was accurate, "that the express language of § 101(10A) makes the question of taxation irrelevant." *Id.* (agreeing with *In re Wayman*, 351 B.R. 808, 811 (Bankr. E.D. Tex. 2006)).

There is a decision that held a 401(k) distribution is included in current monthly income. *See In re Sanchez/In re Zahn*, Nos. 06-40886, 06-40865, 2006 WL 2038616 (Bankr. W.D. Mo. July 13, 2006).[16] There, the bankruptcy court rejected the debtors' argument that the distributions were "income received" when

---

[16] In *Sanchez*, the distribution was made from a 401(k) belonging to one of the joint debtors. In *Zahn*, however, the distribution was from a retirement account belonging to a non-filing spouse.

MEMORANDUM OF DECISION - 12

the wages were earned. *Id*. at *2. The court reasoned that earnings deposited into a 401(k) account are "deferred" as income. Based on the common, dictionary definition of "received," it held that the debtors did not "come into possession" of the earnings until the distribution. It drew support for its conclusion based upon the tax treatment of retirement funds by the Internal Revenue Service, stating that "money contributed to a 401(k) plan is neither received for use by a taxpayer nor recognized as income for tax purposes until that money is withdrawn from the 401(k) plan." *Id*. at *2-3.

However, in a ruling consistent with *Simon*, the Eighth Circuit Bankruptcy Appellate Panel reversed the Missouri bankruptcy court in *Zahn v. Fink (In re Zahn)*, 391 B.R. 840 (8th Cir. BAP 2008). The BAP held that the debtor properly excluded from CMI the distribution that her non-filing spouse had taken from his individual retirement account ("IRA")[17] because it was not "income":

> The corpus of assets and investments are not included in the definition of "income." Only the interest or profit realized on an asset's principal value is included within the legal definition of "income."

391 B.R. at 845.

---

[17] *Zahn* addresses distribution from an IRA, not a 401(k). Most of the BAP's reasoning, such as debtor receiving the income when the funds were earned and deposited and not when withdrawn, and the irrelevancy of taxation or penalty at withdrawal, is applicable to either sort of account. However, the BAP declined to consider whether "mandatory" withdrawals from a 401(k) would fall under the CMI definition relating to amounts paid by entities other than the debtor on a regular basis for the support of the debtor. *See* 391 B.R. at 846 n.2 (addressing § 101(10A)(B)). Such mandatory withdrawals are also not at issue in the instant case.

MEMORANDUM OF DECISION - 13

The BAP also rejected the trustee's argument that the distribution was income due to its deferred tax status, noting that § 101(10A)(A) requires current monthly income to be determined "without regard to whether such income is taxable income." It stated:

> An IRA is similar to a brokerage or savings account. An individual may contribute to an IRA at any time with funds from any sources, subject to a yearly maximum contribution amount. The individual may take distributions from the account at any time, in any amount, for any reason. ... The most significant difference between an IRA and a savings or brokerage account is that non-qualified distributions from IRAs are subject to an additional 10% tax if the distribution is non-qualified. Despite the similarities between an IRA and a savings account, the trustee argues that distributions from IRAs should be treated as income due to the deferred taxation of funds deposited into IRAs. However, because the Bankruptcy Code instructs us to ignore the taxability of income when calculating current monthly income, we find it irrelevant to our decision that funds in an IRA are excluded from federal income tax and non-qualified distributions are taxed an additional 10%. When we exclude the taxability of the accounts, we see no reason why distributions from IRA should be treated any differently than withdrawals from savings accounts. Both should be excluded from current monthly income.

*Id.*

Recognizing that § 101(10A)(A) includes only "income from all sources that the debtor receives," the BAP notes that "[t]he same money cannot be received as income twice" and, thus, rejected the trustee's effective approach to CMI that views the funds as income when earned and deposited in the IRA and again as income when withdrawn. *Id.* at 846. "Logic and common sense indicate that income is received only once, and after that, the income becomes the

MEMORANDUM OF DECISION - 14

individual's asset. A debtor does not 'receive' income when he takes a voluntary distribution from an IRA because the IRA already belongs to the debtor." *Id*.

The Court agrees with the analysis and holding of *Simon* and the noted portions of *Zahn*.[18] The funds held in the Debtors' 401(k) account were "received" as income when they were earned and deposited into that account, which the parties agree was in some unspecified period of time preceding the six-month CMI period. The subsequent distribution from the 401(k) during that six-month period is not "income . . . the debtor receives" for purposes of § 101(10A)(A).

**B. Confirmation**

Even though Debtors' approach to the exclusion of the 401(k) withdrawal from the CMI calculation has been validated, the Court cannot confirm the proposed plan. At the moment, Debtors' plan funds a total of $26,913.00, *see* notes 10 and 11 *supra*, which amount falls well short of providing the $42,459.00 to holders of unsecured claims required under even their last version of Form 22C and § 1325(b)(1)(B).

However, the Court concludes, under the record now before it, that whether Debtors can propose a confirmable plan under their last amended Form 22C and

---

[18] This Court cannot fully embrace *Zahn* because the Eighth Circuit takes a different approach to "projection" of disposable income than *Kagenveama*. *See Coop v. Frederickson (In re Frederickson)*, 545 F.3d 652 (8th Cir. 2008), *cert. denied*, ___ S. Ct. ___, 2009 WL 210498 (U.S. Mar. 23, 2009) (No. 08-950).

MEMORANDUM OF DECISION - 15

the projected disposable income test is neither absolutely certain nor absolutely foreclosed.[19]

For this reason, confirmation will be rescheduled for further hearing, at which time the Court will expect Debtors to present their actual plan payment proposals, and both Debtors and Trustee to present their analysis of the funding requirements of the Code. The parties may also discuss any other confirmation issue remaining unresolved.

**CONCLUSION**

For the reasons stated, the Court concludes that the distribution from the Debtors' 401(k) account was not "income" within the meaning of § 101(10A)(A). Trustee's objection that the proposed plan fails to commit all of Debtors' projected disposable income to payments to unsecured creditors on that ground will be overruled. However, the objection is otherwise well taken as to the plan presently

---

[19] Debtors' last amended schedule I and J indicated net monthly income available of $1,055.00. *See* Doc. No. 60. Assume that payments were made for 3 months at $771.00 and for 3 months at $910.00 (a total of $5,043.00). *See* note 10 *supra*. Then assume that starting in August, 2008, Debtors commenced paying the $405.00 monthly they proposed. Through April, 2009, that would yield $3,645.00 (9 months at $405.00). If those assumptions are accurate, then after those 15 months of payments, 45 months remain in the applicable commitment period with an evident ability of Debtors to pay $1,055.00 per month, which would yield another $47,475.00 (45 x $1,055.00 = $47,475.00). Total plan funding under this scenario would be $56,163.00 ($5,043.00 + $3,645.00 + $47,475.00). If payments to unsecured creditors must equal $42,459.00, there would be $13,704.00 available for (i) Trustee's fees ($5,503.97 on total funds administered of $56,163.00 at the 9.8% rate used in Form 22C, Doc. No. 89 at line 50(b)), and (ii) attorneys' fees (a "compromised" figure of $8,000.00 according to counsel's affidavit, Doc. No. 91) and (iii) $226.51 in total plan payments to a chattel secured creditor (per Doc. No. 56 at 7, ¶ 5.1). Those three categories total $13,730.48. The funding gap is small and may well close, in part because further compromises in fees sought by counsel may be made. The Court also notes that it has yet to rule on the amount of fees.

MEMORANDUM OF DECISION - 16

before the Court, and it remains pending. The Court will enter an order consistent with this Decision, and issue a notice of continued hearing on confirmation.

DATED: April 24, 2009

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE